**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| DONTREAL DAVIS | CIVIL ACTION NO. 07-1060 |
| VERSUS | JUDGE S. MAURICE HICKS, JR |
| HOUSE OF RAEFORD FARMS OF LOUISIANA LLC | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Plaintiff Dontreal Davis ("Davis") filed this employment discrimination lawsuit against his former employer, House of Raeford Farms of Louisiana LLC ("Raeford"). Plaintiff's Complaint alleges that he was pushed by a co-worker and then reassigned when he complained of the incident to his superiors. [Doc. No. 11]. Davis also alleges that he was harassed by his supervisors because they "knew" he planned to pursue legal action due to his being pushed. [Id.] Finally, Davis alleges that he was terminated because he filed a complaint with the Equal Opportunity Commission ("EEOC"). Raeford has filed a Motion for Summary Judgment. [Doc. No. 20]. Davis opposes the motion. For the reasons which follow, the motion is **GRANTED.**

**I.     Factual Background.[1]**

   *A.     Plaintiff's Employment.*

Defendant Raeford is a chicken-processing plant located in Arcadia, Louisiana. Plaintiff Davis has worked for Raeford on and off since September of 2003. In March of

---

[1] For the factual background, the Court relied on Raeford's Statement of Uncontested Facts [Doc. No. 20-1] and the admissible portions of Davis' affidavit [Doc. No. 23-3].

2004, Davis worked in the Sanitation Department. At that time, Raeford divided its plant into two sections for purposes of Sanitation: the Front and Back.

Davis was originally assigned to work the Front. His supervisor in the Front was Timothy Murphy, who is black. Davis worked there until around March 2005, when he was transferred to the Back. His supervisor in the Back was Michael Rhodes, who is black and is also Davis' father. Davis worked in the Back between around March 2005 and February 2006. During the time that Davis was working in the Back, Eric Thompson (who is also black) was the "lead worker." Both Rhodes and Thompson supervised Davis.

### B. Plaintiff's Incident with Eric Thompson.

Davis' lawsuit claims that on February 28, 2006, he was "pushed" by Thompson. His sworn affidavit claims that he was "choked" by Thompson. Davis alleges that he reported the incident to the appropriate chain of command. Raeford responded by issuing written warnings to both Davis and Thompson for engaging in horseplay while at work. After the warning, Davis was transferred back to the Front where he once again worked under Murphy. According to the evidence submitted by Raeford, it was Rhodes, plaintiff's father, who made the decision to transfer him. Plaintiff has not submitted any competent summary judgment evidence to the contrary. Davis' pay and benefits remained the same after his transfer.

### C. Plaintiff Complains to the EEOC.

Davis testified that he called the EEOC and went to see a lawyer after the incident with Thompson. He admits that he never told this to anyone at Raeford. However, he claims that after his reassignment he was constantly harassed by supervisory employees because "it was known" that he planned to pursue legal action because he was pushed by Thompson.

While Davis testified in his affidavit that Raeford knew that he had contacted the EEOC, he has no personal knowledge to support his testimony. His affidavit states that he could tell they knew "because things got even worst (sic)." This is clearly Davis' own assumption and is not based on personal knowledge. Accordingly, Davis' affidavit testimony that Raeford "knew" he had contacted the EEOC is not competent evidence and is inadmissible. In his deposition, Davis admitted that he did not tell anyone at Raeford about his complaint, nor does he know whether anyone at Raeford knew he had contacted the EEOC.

### D. The Sanitation Division Meeting.

On July 10, 2006, William Ovitt, Murphy, and Rhodes convened a meeting of the entire Sanitation Division. At the meeting, Rhodes and Murphy explained that Sanitation would no longer be divided into the Front and the Back; instead, the cleaning procedure would require all Sanitation Division employees to work from the Front to the Back.

Davis testified that although all of the employees disagreed with the new plan, he was the only one who spoke up at the meeting. He complained that he would rather work by himself without anyone helping him and without him helping anyone else. Raeford saw this as a refusal to participate in the new cleaning procedure.

Ovitt asked Davis to leave the meeting and go into his office. Davis claims that Ovitt then told him that if he didn't do what Ovitt told him to do the next day, he would be terminated. Ovitt asked him to leave for the night and told him that if he refused, he would call the police to escort him off the property. Raeford claims that when Davis exited the office, he slammed the door so hard that ceiling tiles fell to the floor. Davis denies slamming the door.

Davis admits that his father told him to leave the property, but he refused because Rhodes did not give him a good reason why he should leave. Rhodes then called the Arcadia Police Department to escort Davis from the property. The next day when Davis called Raeford, he was told not to come back to work. According to the evidence before the Court, it was Rhodes, plaintiff's father, who terminated Davis.

### E. *Plaintiff's Termination*.

Raeford claims that it was Davis's refusal to abide by and participate in the new cleaning procedure for the Sanitation Department (job refusal) and his behavior at the meeting that prompted Rhodes to terminate his own son. Davis claims that he was terminated in retaliation for filing a complaint with the EEOC. He claims that Raeford attempted to justify his termination by completing an Employee Warning Notice and backdating it to February 28, 2006 . He complains that he had never seen the warning notice, which he claims was done to make it appear that Raeford had a basis for his termination.

Davis filed the instant lawsuit under Title VII alleging racial discrimination and retaliation.

## II. Law and Analysis.

### A. *Summary Judgment Standard*

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>New York Life Ins. Co. v. Travelers Ins. Co.</u>, 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); see also, Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075); see also, S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 249-51, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When the nonmovant has the burden of proof at trial, he "must come forward with evidence which would be sufficient to enable it to survive a motion for directed verdict at trial." Stults v. Conoco, Inc., 76 F.3d 651, 656 (5th Cir. 1996). If the nonmovant cannot meet this burden, then "the motion for summary judgment must be granted." Id.

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510.

### B. *Plaintiff's Discrimination Claim.*

In order to prove a *prima facie* claim of discrimination, Davis must show: (1) he is a member of a protected group; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside his protected group, or that a similarly-situated white employee was treated more favorably. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506, 113 S.Ct. 2742 (1993). Davis complains that (1) he was transferred to the Front after receiving a written warning for horseplay; and (2) he was terminated for alleged job refusal. However, Davis fails to state a *prima facie* claim of discrimination because he has failed to submit any competent summary judgment evidence that a similarly-situated white employee was treated more favorably.[2] Davis'

---

[2]Davis has attached pages from his deposition to his opposition. However, he fails to cite to the deposition excerpts or even refer to them anywhere in his filings. As the Fifth Circuit noted in Malacara v. Garber, 353 F.3d 393 (5th Cir.2003): When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, **that evidence is not properly before the district court**. See Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir.1998);

opposition does not even reference any alleged white comparators. Accordingly, summary judgment in favor of Raeford on the discrimination claim is proper as a matter of fact and law.

### C. *Plaintiff's Retaliation Claim.*

Title VII proscribes retaliation against an employee because the employee opposes an unlawful employment practice or participates in a protected activity. Specifically, Title VII's anti-retaliation provision forbids "discriminat[ion] against" an employee who, *inter alia*, has "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation, Davis must show: (1) that he engaged in a protected activity; (2) that an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action. Baker v. Am. Airlines, Inc., 430 F.3d 750, 754 (5th Cir. 2005)(*quoting* Septimus v. Univ. of Houston, 399 F.3d 601, 610 (5th Cir. 2005)).

Davis claims that Thompson, who is also black, physically attacked him. When he complained of the attack, Davis claims that Raeford "retaliated" against him by reassigning him. However, Davis' complaint that his black supervisor pushed or choked him does not concern any activities proscribed by Title VII. His complaint did not concern discrimination

---

Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 916 (5th Cir.1992)*, cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." Ragas, 136 F.3d at 458; Stults, 76 F.3d at 657; Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir.1994), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994); Skotak, 953 F.2d at 916 n. 7; see also Nissho-Iwai American Corp. v. Kline, 845 F.2d 1300, 1307 (5th Cir.1988) (it is not necessary "that the entire record in the case ... be searched and found bereft of a genuine issue of material fact before summary judgment may be properly entered"); *cf.* U.S. v. Dunkel, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

based on race or any other protected category. Since Davis' complaint was not "protected activity" under Title VII, it cannot give rise to a retaliation claim.

On the other hand, Davis' EEOC complaint was "protected activity." However, in order to establish a *prima facie* claim of retaliation, Davis must establish a causal link between his protected activity and some employment action taken against him. Although the plaintiff's burden at the *prima facie* stage is not onerous, he must produce at least some evidence that the decisionmaker had knowledge of his protected activity. Manning v. Chevron Chem. Co. LLC, 332 F.3d 874, 883 n.6 (5th Cir. 2003)(*citing* Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 684 (5th Cir. 2001)). As the Fifth Circuit held in Manning: "If the decisionmakers were completely unaware of the plaintiff's protected activity, then it could not be said (even as an initial matter) that the decisionmakers might have been retaliating against the plaintiff for having engaged in that activity." Manning, 238 F.3d at 883, n.6.

Davis admits that he did not tell anyone at Raeford about his EEOC complaint, nor does he know whether anyone at Raeford knew he had contacted the EEOC. Raeford has submitted competent summary judgment evidence that it did not learn of Davis' EEOC complaint until over three months after he was terminated. [Doc. No. 20-1 at ¶¶ 22, 23]. Since Davis cannot create a genuine issue of fact concerning Raeford's knowledge of his protected activity, summary judgment in favor of Raeford on the retaliation claim is appropriate as a matter of fact and law.

### D. Legitimate, Non-Discriminatory/Retaliatory Reason.

The Court finds that Davis has failed to establish a *prima facie* claim of either discrimination or retaliation. However, even if Davis could establish a *prima facie* claim, summary judgment would still be proper as he has failed to submit any competent summary judgment evidence that the legitimate, non-discriminatory reasons offered by Raeford were false, or were a pretext for illegal discrimination or retaliation. Davis' own father made the decision (1) to transfer him to the Front after his written warning, and (2) to terminate his employment due to his refusal to follow the new cleaning procedures and his behavior at the sanitation meeting. Davis has failed to submit any competent summary judgment evidence to show that these reasons were false, or were a pretext for illegal discrimination and/or retaliation.

### III. Conclusion.

Viewing the facts in a light most favorable to Davis, the Court finds that summary judgment dismissing his discrimination and retaliation claims is proper as a matter of fact and law.

Therefore:

**IT IS ORDERED** that the Motion for Summary Judgment [Doc. No. 20] filed by the defendant is hereby **GRANTED**, and plaintiff's claims are hereby **DISMISSED WITH PREJUDICE.**

**THUS DONE AND SIGNED**, Shreveport, Louisiana, this 30th day of July, 2008.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE